UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FOUGERE Q. HOLCOMBE,

               Plaintiff,        **MEMORANDUM AND ORDER**

   — against —              03-cv-4785 (SLT) (JMA)
                                  08-cv-1593 (SLT) (JMA)
US AIRWAYS GROUP, INC. ET. AL.

               Defendants.
----------------------------------------------------------X
**TOWNES, United States District Judge:**

      Fougere Q. Holcombe ("Plaintiff") brings this action against US Airways Group, Inc. and US Airways, Inc., (together, "US Airways"), Loretta Bove and Beth Holdren, and the International Association of Machinists and Aerospace Workers (the "Union") (collectively, "Defendants"), asserting breach of contract claims and alleging that Defendants discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). US Airways, Bove and Holdren, and the Union have all filed separate motions to dismiss Plaintiff's amended complaint. For the reasons that follow, the court grants the Union's motion in part and denies it in part, grants US Airways' motion in part and denies it in part, and grants Bove and Holdren's motion in its entirety.

I. STANDARDS OF REVIEW

      In considering a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. If a party

does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.*

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *Cortec Indus. ., Inc. v. Sum Holding L.P*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), materials outside the four corners of the complaint are "generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr*, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). However, a court can consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc.*, 949 F.2d at 47–48). The Second Circuit has clarified, however, that mere notice or possession of a document is not enough, and a plaintiff must have *relied* on the document in drafting the complaint. *See U.S. v. Int'l Longshoreman's Ass'n*, 518 F. Supp. 2d 422, 451 (E.D.N.Y. 2007) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## II. BACKGROUND

Except where indicated, the following facts come directly from the first amended complaint ("Amended Complaint") and are construed in a light most favorable to Plaintiff, the party opposing dismissal.

In September of 1986, Plaintiff began working for US Airways as a part-time passenger service agent at LaGuardia airport ("LGA"). (Amended Complaint ¶ 43.) In 1987, she was awarded a full-time passenger service position. (Id. ¶ 45.) Beginning in 1992, Plaintiff functioned as a fleet service agent where she performed tower/operations work, which includes work associated with the communication required to coordinate station operations. (Id. ¶ 46.)

Although it is not clear from the amended complaint precisely when, at some point Plaintiff was diagnosed with Crohn's disease, an inflammatory bowel condition, and she suffers from multiple complications associated with her disease. (Id. ¶ 9; Union Ex. G, US Airways Ex. 12 ("Arbitration Decision") at 2.) Plaintiff's symptoms are particularly strong at night. (Amended Complaint ¶ 9.) In 1995, Plaintiff requested an accommodation and submitted medical information to US Airways indicating that, as a result of her worsening medical condition, she was unable to work at night, stand for long periods of time, or perform strenuous lifting. (Id. ¶¶ 49-50.)

US Airways' company procedure instructs employees with disabilities to direct requests for reasonable accommodations to the US Airways Human Resources Department ("HR"). After review of an employee request for accommodation, HR renders a decision and notifies the station manager and employee of its decision. (Id. ¶ 55.) Although it is unclear if this procedure was followed, in 1996, US Airways offered to accommodate Plaintiff by allowing her to occupy an open-time position in the tower. (Id. ¶ 51.) At this point in time, US Airways offered employees two types of duty assignment: tower positions and open-time tower positions. There were essentially no differences in job responsibilities for these positions; the difference lay in how the shifts were assigned. Tower agents bid for fixed time shifts, whereas open-time agents, who did not have a set work schedule, bid for open time shifts. (Arbitration Decision at 3.) Plaintiff accepted US Airways' proposed accommodation and, for the next several years, due to her seniority, was able to obtain day shifts through the bidding process. (Amended Complaint ¶ 53.)

In 2001, Loretta Bove became station director/manager at LGA. (Id. ¶ 54.) In that capacity, Bove was responsible for direct and overall station operation as well as implementation of HR's decisions regarding employee requests for accommodations. (Id. ¶¶ 54, 56.) That same year, the tower agent positions were merged with the open-time tower agent positions, creating a single tower agent position. (Id. ¶ 57; Arbitration Decision at 3-4.)

Due to the merger of the positions, the bidding process at LGA changed. The open-time positions were made available for open bid to all tower agents and Plaintiff no longer had the seniority to obtain day-time shifts, although she alleges that US Airways concealed its seniority lists from her. (Amended Complaint ¶¶ 57, 63.)

In 2000 and 2001, Plaintiff underwent several surgeries and took two extended medical leaves due to her condition. (Id. ¶ 64.) Upon returning to work following Plaintiff's second medical leave, she worked day-time shifts for two weeks and then, from January to November of 2002, was forced to work night shifts. (Id. ¶ 66.) In January of 2002, Plaintiff met with Bove to discuss an accommodation for her medical restrictions. (Id. ¶ 67.) At the meeting, Plaintiff allegedly proposed several possible accommodations that she would accept if a day-time shift was not available to her at LGA, including temporary assignments, combination of job duties, assignment to another position, or assignment to other fleet service positions within the company outside of the craft and class covered by the collective bargaining agreement ("CBA").[1] (Id. ¶ 69.) Bove indicated that it was impossible for US Airways to provide Plaintiff with day-time shifts without violating seniority provisions in her CBA and that she would wait for HR's response to Plaintiff's accommodation requests before commenting on them. (Id. ¶ 73.)

In its letter dated January 25, 2002, HR indicated that day-time shifts might not be available to Plaintiff but offered several possible solutions as to how US Airways might accommodate Plaintiff without violating the seniority requirements in the CBA. (Id. ¶ 74.) According to Plaintiff, Bove refused to adequately accommodate her. Bove declined Plaintiff's requests to transfer her to another location or position, refused to engage in the interactive process with Plaintiff, and refused to comply with HR's directions. (Id. ¶¶ 75, 82.) Instead,

---

[1] Two substantially identical versions of the CBA are at issue here. The Union and US Airways entered into the first CBA in or around April 1999. The second CBA was executed on January 31, 2005. (Complaint Exs. 3, 4.) Given that there is no dispute that the relevant provisions of both the 1999 CBA and 2005 CBA are identical, except where it is necessary to distinguish between them, the court will simply refer to the "CBA," which will mean the CBA in effect at the relevant time.

Bove advised Plaintiff that she could either return to work on the evening shift, which her seniority would allow, or she could take a leave of absence if she could not return to work. (Id. ¶ 77.) Notwithstanding Bove's alleged stance on Plaintiff's requests for accommodation, Plaintiff does acknowledge that in early 2002, Bove offered her an available ramp position. (Id. ¶ 92.) However, because this position required an individual to load and unload cargo on and off airplanes, which Plaintiff says she could not physically do given her medical condition, Plaintiff contends that this offer did not constitute an accommodation at all. (Id. ¶ 93.) Plaintiff alleges that Bove, with the Union's acquiescence, "purposefully precluded [her] . . . from being transferred to another position or location in accordance with the relevant provisions of the CBA and [US Airways'] policy." (Id. ¶¶ 87-88.) Plaintiff also alleges that, for its part, HR failed to make any further inquiries, exercise control, or otherwise investigate Bove's conduct. (Id. ¶ 76.)

On October 7, 2002, Plaintiff filed an EEOC charge alleging discrimination against the Union. (Id. ¶ 97.) Two days later, on October 9, Plaintiff filed an additional EEOC charge alleging discrimination against US Airways. (Id.) On October 15, 2002, a hearing was held to address Plaintiff's grievances. (Id. ¶ 98.) Plaintiff alleges that she was not notified of the hearing and that, as a result, her personal representative did not appear, and that her request for a postponement was denied. (Id. ¶¶ 99-100.) In any event, at the hearing, Plaintiff alleges that Beth Holdren, as US Airways' representative, falsely claimed that US Airways could not make Plaintiff a reasonable accommodation due to her level of seniority. Moreover, Plaintiff alleges that the Union's representative did not object to such statements and "clearly demonstrated" that the Union did not support Plaintiff's grievances and had no interest in pursuing them. (Id. ¶ 100.) Plaintiff's grievances were subsequently denied. (Id.)

On November 4, 2002, Holdren issued a written inquiry to the Union asking permission to violate provisions of the CBA "so that US Airways could accommodate [Plaintiff's] request to work a daylight shift even though she did not have the requisite seniority," but the Union declined US Airways' request. (Id. ¶¶ 104-05.) Following the Union's refusal to allow US

Airways to violate the CBA, in January of 2003, Plaintiff was directed to work at night. (Id. ¶ 107.) Plaintiff refused and insisted on reassignment to another position or a transfer to another location in accordance with the possible accommodations mentioned in HR's January 25, 2002 letter. (Id. ¶ 108.) Moreover, despite Plaintiff informing Bove, in writing, that she did not intend to apply for medical leave, Plaintiff was involuntarily placed on a medical leave of absence as of January 1, 2003. (Id. ¶¶ 27, 109-10.) Plaintiff alleges that the Union consented to this decision. (Id. ¶ 111.) As a result of being placed on medical leave – as opposed to being granted the requested accommodation or furloughed – Plaintiff was precluded from retaining her recall rights and was denied an opportunity to return to active status through participation in the bidding process, recall, reassignment, or transfer. (Id. ¶¶ 116, 118.)

On April 10, 2003, the EEOC issued its decision, finding that US Airways discriminated against Plaintiff in violation of the ADA by harassing her and refusing to accommodate her based on her disability. (Id. ¶ 25.) Upon making its findings, the EEOC "attempt[ed] to eliminate the alleged unlawful practices by informal methods of conciliation," and invited US Airways and Plaintiff to "join with it in reaching a just resolution of this matter." (Amended Complaint Ex. 7.) It is unclear what, if any steps, were subsequently taken regarding the EEOC's decision and attempts at conciliation, but, on September 19, 2003, Plaintiff commenced an action in this court against both US Airways and the Union alleging discrimination, retaliation, and a failure to adequately represent her in violation of federal and state law. (Amended Complaint ¶ 139.) That action was stayed with respect to US Airways and the Union as a result of US Airways' bankruptcy filing on September 12, 2004.

On August 1, 2007, the Union's counsel met with Plaintiff and informed her that the Union and US Airways had scheduled an arbitration proceeding in connection with her "grievances." (Id. ¶ 146.) The scope of the arbitration, determined solely by US Airways, was limited to resolving whether US Airways violated the CBA by placing Plaintiff on a different shift assignment following her return in 2002 from a medical leave of absence, combining two LGA

6

tower-based assignments into one, or deeming Plaintiff to have resigned after her failure to return from a leave of absence for more than three years. (Id. ¶¶ 150, 156.) The Union rejected Plaintiff's request to include in the proceedings her grievance regarding her placement on involuntary medical leave. (Id. ¶¶ 151, 155.) Plaintiff also alleges that the Union refused to assist her in obtaining various information she sought from US Airways. (Id. ¶ 152.)

While on medical leave with her first action pending before this court, Plaintiff alleges that she applied for available vacancies, sought reassignment or a transfer, and was ready to work at any US Airways location and in any department. (Id. ¶¶ 129, 131.) Plaintiff asserts that she received several interviews and was even selected for several positions. (Id. ¶ 134.) Nonetheless, upon their contacting Bove, Plaintiff never heard from her interviewers again. (Id. ¶ 134.) In November of 2006, Plaintiff received a letter from the US Airways Department of Labor Relations dated October 18, 2006 notifying her that she was deemed to have resigned beginning January 1, 2006. (Id. ¶ 136.) Notwithstanding this letter, on April 9, 2007, HR notified Plaintiff that its records indicated that Plaintiff remained on a leave of absence. (Id. ¶ 137.)

On September 21, 2007, Plaintiff filed an additional EEOC charge against US Airways and the Union. Plaintiff alleged that US Airways harassed her and retaliated against her by placing her on involuntary leave and effectively terminating her and that the Union discriminated and retaliated against her, essentially, by allowing US Airways to engage in such conduct. (US Airways Ex. 13.) On September 24, 2008, the Union's System Board of Arbitration ("System Board") conducted an evidentiary hearing on Plaintiff's grievances in New York.[2] (Id. ¶ 153.) On March 22, 2009, the System Board denied Plaintiff's grievances, finding that US Airways had no obligation to "create a new job" or "to violate the contractual rights of other employees

---

[2] The court notes that Plaintiff's complaint indicates that the evidentiary hearing was held on September 24, 2009. However, as Plaintiff's complaint also alleges, the related opinion was issued on March 22, 2009, *before* the date on which Plaintiff purports the hearing occurred. The 2009 hearing date therefore appears to be an error. In any event, the precise date of the hearing is not material to any motion currently before the court.

under the CBA in order to accommodate the disabled employee." (Id. ¶¶ 154, 159.) The System Board further found that US Airways had "no obligation to provide a day time work shift to [Plaintiff] and [that US Airways] made every effort to accommodate [Plaintiff] and her medical condition." (Id. ¶ 165.)

As a result of her alleged termination, on April 17, 2008, Plaintiff commenced a second action against US Airways and the Union, repeating the allegations she made in her complaint filed in the 2003 action and adding allegations that her January of 2006 termination was discriminatory. (Id. ¶ 1.) On June 6, 2008, the 2003 action was reopened following the April 17, 2008 filing of the 2008 Action. (Dkt. Sht. 03-cv-4785, Document No. 26.)

The Bankruptcy Cases of US Airways and Related Rulings

On August 11, 2002, approximately two months before Plaintiff filed EEOC charges against the Union and US Airways, US Airways filed its first petition for chapter 11 reorganization in the United States Bankruptcy Court for the Eastern District of Virginia. (Amended Complaint ¶ 40; Amended Complaint Ex. 8.) The joint plan of reorganization filed on January 17, 2003 was confirmed pursuant to an order of the bankruptcy court dated March 18, 2003. (Amended Complaint Exs. 8, 10.) On September 12, 2004, US Airways again filed for chapter 11 relief in the bankruptcy court of the same district. (Amended Complaint ¶ 144.) As described, in light of US Airways' second bankruptcy filing, this court issued an order on November 4, 2004 staying the proceedings in Plaintiff's 2003 action pending the outcome of the proceedings in the bankruptcy court. (Dkt. Sht. 03-cv-4785, Document No. 13.) The plan of reorganization filed on July 27, 2005 in US Airways' second bankruptcy case was confirmed pursuant to an order of the bankruptcy court dated September 16, 2005. (Amended Complaint Exs. 9, 11.)

In an opinion issued on April 2, 2007 in US Airways' second bankruptcy case, the bankruptcy court granted a motion for summary judgment in favor of US Airways. More specifically, the bankruptcy court held that Plaintiff's ADA discrimination claim had been

discharged in US Airways' first bankruptcy case. *See In re U.S. Airways, Inc.*, 365 B.R. 624, 624 (Bankr. E.D.Va. 2007). In so ruling, the bankruptcy court noted that "all of the relevant acts underlying [Plaintiff's] claim occurred prior to the March 18, 2003 confirmation date in the first bankruptcy case." *Id.* at 630. Because Plaintiff "did not file a timely proof of claim or request for payment of an administrative expense in the first case," the bankruptcy court found that Plaintiff's claim did not "survive the discharge that was granted in that case." *Id.* at 631. The district court for the Eastern District of Virginia affirmed the bankruptcy court's holding.

On appeal from the district court, the Fourth Circuit affirmed the decision in part only. *See generally Holcombe v. US Airways, Inc.*, 2010 WL 750086 (4th Cir. Mar. 5, 2010), *cert. denied*, 131 S. Ct. 343 (2010). The Fourth Circuit agreed that any of Plaintiff's claims arising from pre-confirmation actions had been discharged in bankruptcy. *See id.* at *4 ("[Plaintiff's] failure to file a proof of claim after receiving notice in the first US Airways bankruptcy case means her claim as to any pre-confirmation actions did not survive the discharge.") The Fourth Circuit concluded, however, that any of Plaintiff's claims arising from acts that occurred *after* the March 18, 2003 confirmation date survived. The court accordingly remanded the case to the bankruptcy court to determine if any of Plaintiff's claims survived and, if so, for the district court to consider them. *Id.* Plaintiff sought to appeal that decision to the Supreme Court, but the Court denied her petition for a writ of certiorari. *Holcombe v. U.S. Airways, Incorporated*, 131 S. Ct. 343 (2010).

On remand to the bankruptcy court, Plaintiff filed a motion arguing that she should be allowed to litigate all of her claims -- not just those identified by the Fourth Circuit -- because US Airways had obtained the district court's order by committing a fraud on the court. *See In re U.S. Airways, Inc.*, 445 B.R. at 573. The bankruptcy court denied Plaintiff's motion, finding Plaintiff's arguments to be without merit. *See id.* at 575. The court did, however, schedule an evidentiary hearing to determine whether, after March 18, 2003, US Airways had unjustifiably failed to select Plaintiff for jobs for which she was qualified in violation of the ADA. *Id.* On June

8, 2011, the bankruptcy court disallowed whatever claims may have survived the March 18, 2003 confirmation of the plan, finding that Plaintiff had failed to comply with discovery orders and concluding that summary judgment against her was an appropriate sanction. (*See* US Airways Reply Ex. 1.)

On December 22, 2010, Plaintiff filed identical amended complaints in both of her actions against US Airways and the Union. (*See* Dkt. Shts. 03-cv-4785, Document No. 102; 08-cv-1593, Document No. 62.) In addition to US Airways and the Union, Plaintiff named as defendants Bove and Holdren. (*See* id.) Moreover, although the cases have not been consolidated, the court notes that identical motions to dismiss have been filed in both cases. (*See* Dkt. Shts. 03-cv-4785, Document Nos. 118, 119, 122; 08-cv-1593, Document Nos. 74, 75, 78.)

Plaintiff has asserted an array of claims against the defendants. She has alleged that the Union breached its duty of fair representation in violation of the ADA and that both the Union and US Airways breached the CBA and defrauded the bankruptcy court. She further alleges that the Union and US Airways discriminated and retaliated against her in violation of the ADA and NYSHRL. Finally, she alleges that all of the defendants discriminated and retaliated against her in violation of the NYCHRL, although she also alleges that Bove and Holdren violated the NYCHRL by aiding and abetting US Airways in its discrimination of her.

## III. DISCUSSION

As a preliminary matter, the court finds that Plaintiff's complaint satisfies the requirements of Federal Rule of Civil of Procedure 8. Rule 8(a) requires that a complaint set forth a "short and plain statement of the claim," while Rule 8(e) requires "[e]ach averment of a pleading [to be] simple, concise and direct." Fed. R. Civ. P. 8(a), (e)(1). Although Plaintiff's amended complaint would undoubtedly have benefitted from a greater attention to brevity, the court finds that it provided each of the defendants with "fair notice of what [Plaintiff's] claims [are] and the grounds upon with [they] rest." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513

(2002) (citation omitted).  The court, therefore, does not believe that the complaint is so lengthy or verbose as to necessitate dismissal.  Moreover, the court will consider any EEOC complaint that Plaintiff has filed, as well as the relevant records of the administrative and bankruptcy proceedings explicitly mentioned in Plaintiff's complaint, given that Plaintiff has raised no objection to consideration of any of those records and that the court finds these documents have both been incorporated by reference into the complaint and are integral to it.  *See Done v. HSBC Bank USA*, 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010); *Int'l Audiotext Network v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).


Plaintiff's Claims Against the Union and US Airways for Breach of the CBA Are Time-Barred
(Count II Against US Airways and the Union and Count III against US Airways)

When an employee alleges, as Plaintiff does here, both a breach of a CBA and a breach of a union's duty of fair representation, the claim is considered a hybrid claim.  *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164–65 (1983); *Carrion v. Enterprise Ass 'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 34 (2d Cir. 2000).  Here, Plaintiff's claim alleges  a hybrid claim for breach of the Union's duty of fair representation and violations of the Railway Labor Act ("RLA"), which governs the CBAs at issue.  (*See* Amended Complaint Ex. 3 at 1 (Preamble); Amended Complaint Ex. 4 at 2 (Preamble).)  Hybrid claims are governed by a six-month statute of limitations.  *See Osman v. Pan Am. World Airways, Inc.*, 584 F. Supp. 517, 518 (S.D.N.Y. 1984) (citations omitted).  In a hybrid case, the cause of action accrues -- and the statute of limitations begins to run -- when the union member "knew or reasonably should have known that a breach of the [union's] duty of fair representation had occurred." *Kavowras v. The New York Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003).  The six-month limitations period applies regardless of whether the employee sues the union, the employer, or both.  *See Corr v. MTA Long Island Bus*, 27 F. Supp. 2d 359, 372 (E.D.N.Y. 1998) (citing *McKee v. Transco Prods., Inc.*, 874 F.2d 83, 86 (2d Cir. 1989)).

Plaintiff alleges that US Airways violated the CBA by refusing to accommodate her disability when she returned to work in 2002, placing her on medical leave in 2003, and effectively terminating her in January of 2006. Plaintiff alleges that she received notice of her 2006 termination in November of that year. (Amended Complaint ¶ 136.) Plaintiff further alleges that during this same time period, the Union violated the CBA by failing to adequately represent her in the grievance process. (Id. ¶ 210.) The System Board issued its opinion denying Plaintiff's grievances on March 22, 2009. (US Airways Ex. 12 at 1.) Plaintiff was therefore required to assert her hybrid claims of breach of the CBA no later than September 22, 2009. Plaintiff, however, did not assert any claims for violation of the CBA until she filed her amended complaint on December 22, 2010. As a result, her claims alleging that US Airways breached the CBA are untimely.

Plaintiff disputes that her breach of the CBA claims are untimely, contending that she adequately pled them in her initial complaints filed in 2003 and 2008. The court disagrees. Although Plaintiff's complaints refer to various acts on the part of the Union regarding the handling of her grievances and her representation, such conduct appears to be alleged only in furtherance of Plaintiff's claims of discrimination and retaliation, not breach of the CBA. (*See* 2003 Original Complaint ¶¶ 32-33; 2008 Original Complaint ¶¶ 46-50.) There is no mention of US Airways' violation of the CBA in the original complaints. Rather, as US Airways points out, both Plaintiff's 2003 and 2008 original complaints contain claims only of discrimination and retaliation under the ADA, as well as state and municipal statutes, and do not assert any causes of action for breach of the CBA, which were first alleged in her December 22, 2010 amended complaint.

Moreover, to the extent Plaintiff argues that it is impossible to determine when she first learned of the Union's failure to adequately prosecute her grievances, as well as its failure to take an adversarial position against US Airways, the court finds that Plaintiff would likely have been aware of these issues by September 24, 2008, the date of the evidentiary hearing before

the System Board. Even assuming that Plaintiff was somehow not aware of these issues until she received the System Board's decision on March 22, 2009, as indicated, Plaintiff's claims for breach of the CBA, raised for the first time in December of 2010, are still untimely. Similarly, Plaintiff was at least aware of any failure on the Union's part to keep records of her grievances by February 28, 2008, the date she alleges that she was informed that the Union "claimed to have failed to maintain the proper records of Plaintiff's grievances." (Amended Complaint ¶ 150.) Accordingly, Plaintiff's claims against the Union and US Airways for breach of the CBA are untimely and the court dismisses Count II against the Union and US Airways and Count III against US Airways.

Plaintiff's Claims Against the Union

     A. Plaintiff's State and Local Law Claims Against the Union (Counts VI, VII, VIII, IX, and X)

     Preliminarily, the Union argues that Plaintiff's state and local law claims against it are preempted by the federal duty of fair representation under the RLA. The duty of fair representation is "a statutory obligation [for an exclusive bargaining representative] to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). State law claims are preempted "if they attempt to impose obligations on a union that are subsumed by the duty of fair representation." *Marrero v. City of New York*, 2003 WL 1621921, at *3 (S.D.N.Y. Mar. 28, 2003). The Second Circuit has not addressed the issue of whether the NYSHRL or NYCHRL are preempted by the duty of fair representation. *See Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 507 (S.D.N.Y. 2011) (citing *Bryant v. Verizon Comm., Inc.,* 550 F. Supp. 2d 513, 527 (S.D.N.Y. 2008). Nonetheless, the "vast majority of cases in this Circuit, when dealing with state-law claims of discrimination against a union, have found such claims to be subsumed by the duty of fair representation." *Id.* (collecting cases).

13

Here, Plaintiff claims that the Union failed to pursue and properly manage grievances on her behalf and failed to adequately represent her at the arbitration addressing her grievances, all for discriminatory or retaliatory reasons.  However, as these claims "impose no obligation on [the Union] that is not already required by the duty of fair representation," they are subsumed by that duty and are preempted.  *Angrisani v. LIRR*, 2005 WL 1311798, at *7 (E.D.N.Y. June 1, 2005).  Plaintiff proffers no explanation for why her state and local law claims against the Union are not preempted and the court notes that it "matters not that Plaintiff alleges that the Union is alleged to have failed [her] on account of her alleged disability . . . [since] the duty of fair representation encompasses the duty to represent union members without discrimination."  *Id.* (quoting *Zuckerman v. Volume Servs. Am., Inc.*, 304 F. Supp. 3d 365, 373 (E.D.N.Y. 2004) (all alterations in original)); *Goodman v. Port Auth. of New York and New Jersey*, 2011 WL 3423800, at *8 (S.D.N.Y. Aug. 4, 2011) ("Plaintiff's claim that the Union aided and abetted discriminatory acts by [plaintiff's] employers and thereby violated the NYSHRL is preempted by [the Labor Management Relations Act] and is subsumed by the Union's  . . . duty of fair representation.").  Accordingly, Plaintiff's claims against the Union that arise under state and local law are dismissed.

B. Plaintiff's ADA Claim that the Union Breached its Duty of Fair Representation (Count I)

Although not entirely clear from Plaintiff's complaint, it appears that in addition to her hybrid claims against the Union and US Airways discussed above, Plaintiff asserts that the Union breached its duty of fair representation in violation of the ADA.  *See Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 219 (S.D.N.Y. 1998) (noting that hybrid claims for the breach of the duty of fair representation asserted under statutes like the Labor Management Relations Act or the Railway Labor Act are distinct from claims asserted under the ADA).  "Employment discrimination claims against labor organizations are analyzed differently from claims against employers."  *Mahinda v. Org. of Staff Analysts*, 2012 WL 1999691, at *3

(S.D.N.Y. June 1, 2012) (citation omitted).  Unlike hybrid RLA/duty of fair representation claims, for claims alleging a Union's breach of its duty of fair representation pursuant to the ADA, courts will apply the ADA's three-year statute of limitations.  *See Morris v. Ford Motor Co.*, 2009 WL 2448473, at *5 (W.D.N.Y. Aug. 7, 2009).

A plaintiff claiming that a union discriminated or retaliated against her based on her disability is required to show that (1) the union breached its duty of fair representation, and (2) that the union's actions were motivated by a discriminatory or retaliatory animus.  *Mahinda*, 2012 WL 1999691 at *3.  "[B]reach occurs only when a union's conduct toward a member . . . is arbitrary, discriminatory, or in bad faith," *United Steelworkers of Am., AFL-CIO v. Rawson*, 495 U.S. 362, 372 (1990), or "when it causes an employer to discriminate against employees on arbitrary, hostile, or bad faith grounds."  *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 277 (2d Cir. 2004).  "Mere negligence or tactical error on the part of a union are insufficient to establish a breach of the duty of fair representation."  *Martinez v. Caravan Transp., Inc.*, 253 F. Supp. 2d 403, 411 (E.D.N.Y. 2003).

The court finds that Plaintiff has sufficiently alleged that the Union breached its duty of fair representation.  In her amended complaint, Plaintiff attributes a variety of misconduct to the Union, including that the Union did not inform her of its decision not to pursue her grievance regarding her placement on involuntary medical leave, adopted/refused to correct various misstatements of facts made by representatives of US Airways at the arbitration before the System Board, and indicated at her arbitration that it did not support her grievances or her request for an accommodation.  (Amended Complaint ¶ 204.)  The Union does not address these allegations in its memorandum in support of its motion to dismiss, and instead relies on the reasonableness of its decision not to pursue Plaintiff's grievance.  (Union Memorandum of Law at 12-15.)  Whatever merit there may be to the Union's argument, it does not address Plaintiff's allegations that the Union misrepresented its position regarding her grievances to her or that the Union indicated at the evidentiary hearing on her grievances that it opposed her

15

request for accommodation.  To be sure, the court makes no determination as to the underlying merit of these factual allegations, which may ultimately prove to be without foundation. However, at this stage in the proceedings, dismissal on this ground is inappropriate.

Notwithstanding that Plaintiff has sufficiently pled that the Union breached its duty of fair representation in violation of the ADA, to state a plausible claim for discrimination or retaliation under the ADA, she must additionally allege facts that demonstrate that the Union's actions were motivated by discriminatory or retaliatory animus.  *See Mahinda*, 2012 WL 1999691, at *3. The court considers these issues separately.

C. Plaintiff's ADA Claim of Discrimination Against the Union (Count IV)

Plaintiff alleges that despite the Union's knowledge that she was disabled and had requested an accommodation, it refused to assist her in obtaining an accommodation and impermissibly denied US Airways permission to violate the seniority provisions of the CBA. Knowledge of Plaintiff's disability, however, does not necessarily mean that the actions taken by the Union were on account of her disability.  *Cf. Weiss v. La Suisse*, 260 F. Supp. 2d 644, 657 (S.D.N.Y. 2000) ("A defendant's knowledge of a plaintiff's race may be necessary to prove discriminatory intent.  But it is not, without more, *sufficient* to support such an inference.") (emphasis in original).  Here, Plaintiff alleges that the Union mishandled her grievances and failed to adequately assist her in gaining an accommodation, but she does not allege any facts that could be read to raise an inference that the Union acted in any particular way *because* of her disability.  Under such circumstances, Plaintiff has not alleged facts that permit the court to draw an inference of discrimination and the court grants the Union's motion to dismiss Plaintiff's ADA discrimination claim against it.  *See Natarelli v. New York State Office of Vocational and Educ. Servs. for Individuals with Disabilities*, 2009 WL 5204179, at *4 (N.D.N.Y. Dec. 21, 2009) (dismissing ADA discrimination claim because plaintiff "has not alleged any facts plausibly suggesting that he was discriminated against *because* of his disability.") (emphasis in original).

16

D. Plaintiff's ADA Claim of Retaliation Against the Union (Count V)[3]

Plaintiff alleges that in response to her October 7, 2002 EEOC complaint, the Union retaliated against her by refusing to support her grievances, investigate US Airways' denial of her request for accommodation and its request to violate the CBA, or pursue at the arbitration her grievance regarding her placement on medical leave. (Amended Complaint ¶¶ 221-22.) The Union does not address whether Plaintiff has sufficiently alleged retaliatory animus, and instead asserts only that Plaintiff's retaliation claim is unexhausted. More specifically, the Union contends that because Plaintiff did not check the "retaliation" box on her October 7, 2002 EEOC charge, nor mention any instances of retaliation in that charge, she is barred from asserting that claim in this court.

The Union's position is somewhat perplexing to the court. Despite the fact that the Union faults Plaintiff for not mentioning in her 2002 EEOC charge the instances of retaliation referred to in her amended complaint, Plaintiff alleges that the Union retaliated against her *because* she filed the 2002 charge. Recognizing this may sometimes be the case, the law permits a plaintiff who brings a claim alleging retaliation for filing a complaint with the EEOC to proceed directly to federal court without the need to resort to a second EEOC filing. *See Owens v. New York City Housing Auth.*, 934 F.2d 405, 410-11 (2d Cir. 1991) ("We have previously held that when an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is 'reasonably related' to the original EEOC filing. In such a case, the allegations of retaliation are seen as stemming from . . . plaintiff's attempt to vindicate her federal rights against discrimination [and t]he retaliation claim may . . . be heard notwithstanding plaintiff's failure to state it in a separate complaint filed with the EEOC."). Thus, regardless of whether Plaintiff filed an additional EEOC complaint specifically alleging retaliation for having

---

[3] Plaintiff's heading for Count V refers to the ADA and Title VII of the Civil Rights Act of 1964. However, given that Plaintiff's allegations pertain only to the ADA and her disability, and Plaintiff does not allege any form of retaliation premised on her race, color, religion, national origin, or gender, the court construes her claim as arising only under the ADA.

filed her 2002 EEOC complaint, the court deems Plaintiff's ADA retaliation claim against the

Union exhausted and the Union's motion to dismiss is denied on this ground.[4]

      E. Plaintiff's Fraud Claim Against the Union (Count XIX)

Plaintiff and the Union have set forth different standards for establishing fraud.  Plaintiff

appears to rely on the standard governing motions made pursuant to Federal Rule of Civil

Procedure 60(b)(3).  (Amended Complaint ¶ 269.)  That provision, however, is inapplicable

here.  Rule 60(b)(3) provides relief from a judgment or order only upon a showing of "fraud . . .

by an *opposing party*" and there is no allegation in the amended complaint that the Union was a

party in the bankruptcy proceedings.  FED. R. CIV. P. 60(b)(3) (emphasis added).  Indeed, the

Union appears to have filed only an *amicus curiae* brief to the Fourth Circuit related to the

bankruptcy court proceedings and was not, therefore, a party to the bankruptcy action.  *See*

*Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F. Supp. 2d 295, 311

(W.D.N.Y. 2007) ("An *amicus curiae* is not a party and has no control over the litigation and no

right to institute any proceedings in it, nor can it file any pleadings or motions in the case.")

(citation omitted); *see also Cohen v. Empire Blue Cross and Blue Shield*, 176 F.3d 35, 41 (2d

Cir. 1999) (concluding that because the government was present only as an *amicus curiae*, and

"[a]n *amicus curiae* is not a party," the government "was not at any time a party to the action.").

In addition to invoking Rule 60(b)(3), a party may also bring a separate action to set

aside a court's decision that was based on fraudulent misrepresentations pursuant to Rule

60(d).  *See* FED. R. CIV. P. 60(d) ("This rule does not limit the power of a court to entertain an

independent action to relieve a party from a judgment, order, or proceeding.").  Although both

Rule 60(b)(3) and Rule 60(d) provide for relief from a judgment on the basis of fraud, the type of

---

[4] Although not attached to either the Amended Complaint or the Union's motion to dismiss, nor addressed by either party, the court notes that Plaintiff did in fact file a second EEOC complaint against the Union in September of 2007 alleging that the Union, in retaliation for her earlier EEOC complaint, failed to adequately represent her interests.  (*See* US Airways Ex. 13 (Plaintiff's 2007 EEOC Complaint).)

fraud necessary to sustain an independent action attacking the finality of a judgment pursuant to Rule 60(d) is narrower in scope than that which is sufficient for relief by timely motion pursuant to Rule 60(b)(3). *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-46 (1944). Moreover, "fraud upon the court," as distinguished from fraud on an adverse party, is limited to fraud which seriously affects the integrity of the normal process of adjudication. *See Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972).[5]

The Union, relying on the Second Circuit's decision in *Leber-Krebs, Inc. v. Capitol Records*, essentially asserts that because Plaintiff is pursuing her fraud on the court claim via an independent action pursuant, she must establish: (1) a misrepresentation to the court by the defendant, (2) a description of the impact the misrepresentation had on proceedings before the court, (3) a lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring an appropriate corrective proceeding, and (4) the benefit the defendant derived from the misrepresentation. *See In re Nicholas*, 457 B.R. 202, 220 (Bankr. E.D.N.Y. 2011) (citing *Leber-Krebs, Inc. v. Capitol Records*, 779 F.2d 895 (2d Cir. 1985)). The court agrees that this is the correct approach.

In Plaintiff's amended complaint, she does not allege any fraudulent conduct specific to the Union. This, alone, is fatal to Plaintiff's fraud claim against the Union. *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) (noting that allegations of fraud on the court must be pled with particularity as required by

---

[5] Prior to December 1, 2007, independent actions were brought under Rule 60(b)'s "saving clause" instead of Rule 60(d). *See Eastern Financing Corp. v. JSC Alchevsk Iron and Steel Works*, 2008 WL 2518700, at *19 n. 21 (S.D.N.Y. June 24, 2008) (noting that prior to December 1, 2007, an action for setting aside a judgment for fraud upon the court was pursuant to Rule 60(b) rather than Rule 60(d)). In 2007, Rule 60 was amended stylistically and the final sentence of Rule 60(b) -- allowing a judgment to be set aside by motion or independent action -- was deleted. *See* 2007 Amendments to FED. R. CIV. P. 60. As Rule 60 stands currently, independent actions are brought under Rule 60(d).

Rule 9(b)). Nevertheless, in her opposition to the Union's motion to dismiss, Plaintiff argues that the Union concealed from her an agreement that it had reached with US Airways that had an impact on the status of some of her claims, as well as the fact that the 2003 Plan of Reorganization released certain of her claims. (Pl. Opp. to Union Me. at 22-23.) Plaintiff does not, however, assert that the Union concealed any information from the bankruptcy court, and she does not explain why any concealment from her should constitute a misrepresentation to the bankruptcy court. Accordingly, Plaintiff has failed to state a plausible claim that the Union engaged in any fraud during the bankruptcy court proceedings.

The court similarly finds no merit in Plaintiff's allegations that the bankruptcy court was defrauded by the Union's decision to file an allegedly forged letter. In her allegations of fraud Plaintiff does not distinguish between acts taken by the Union and its counsel and acts taken by US Airways and its counsel. The complaint, therefore, in no way describes the Union's specific role in creating or filing the allegedly fraudulent document. This claim too, then, fails the particularity requirement of Federal Rule of Civil Procedure 9(b). *See* FED. R. CIV. P. 9(b); *see also Madonna*, 878 F.2d at 66. In any event, Plaintiff does not appear interested in pursuing her allegations regarding the forged document as to the Union as she does not address them in her opposition to the Union's motion to dismiss. (*See* Pl. Opp. to Union Mem. at 22-24.) Given that Plaintiff has failed to allege any misrepresentations made to the court by the Union, the court dismisses Plaintiff's fraud claim against the Union.[6]

Plaintiff's Claims against US Airways

---

[6] Plaintiff also alleges for the first time in her opposition to the Union's motion to dismiss that the Union committed a fraud on this court. Specifically, Plaintiff alleges that the Union has taken the position here that US Airways' placement of Plaintiff on involuntary medical leave complied with the CBA, a position that Plaintiff alleges is contradictory to the position assumed by the Union in its submission to the Fourth Circuit. (Pl. Opp. to Union Mem. at 23-24.) For its part, the Union states that its position is not contradictory, but rather recognition of the arbitration award establishing the rectitude of US Airways' position issued after the Union submitted its brief to the Fourth Circuit. In light of the intervening opinion by the System Board in the arbitration, the court concludes that any inconsistency in the Union's position does not amount to a fraud on the court.

A. *Res Judicata* Bars Plaintiff's Fraud Claim Against US Airways (Count XIX) As Well as Any Claim Arising Before March 18, 2003

"[U]nder '*res judicata*, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action.'" *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d. 413, 421 (S.D.N.Y. 2008) (quoting *Parker v. Blauvelt Volunteer Fire Co.*, 712 N.E.2d 647 (1999)). Thus, the doctrine bars "later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985). This rule applies with full force to matters decided by the bankruptcy courts. *See Katchen v. Landy*, 382 U.S. 323 (1966); *In re Teltronics Servs.*, 762 F.2d at 190. Regarding Plaintiff's claims against US Airways arising before March 18, 2003 as well as her fraud claims, the court finds that the elements of *res judicata* have been satisfied and those claims are barred from this court's consideration.

First, there can be no dispute that the bankruptcy court proceedings involved the same parties, Plaintiff and US Airways. There can likewise be no dispute that the bankruptcy court exercised powers within its competent jurisdiction in concluding that Plaintiff had not established that US Airways engaged in any fraud on the court and that her claims arising before March 18, 2003 did not survive the discharge that was granted in that case. *See Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 89 (2d Cir. 1997) (noting that a bankruptcy court exercises powers that are within its competent jurisdiction for purposes of *res judicata* analysis when determining the scope of discharge). Second, the court concludes that the bankruptcy court's decision was a final judgment on the merits. In its April 2, 2007 decision, the bankruptcy court dismissed all of Plaintiff's claims that arose prior to the March 18, 2003 confirmation date. The Fourth Circuit ultimately affirmed this holding and remanded the case to the bankruptcy court only to the extent it could determine which, if any, of Plaintiff's claims arose after the March 18, 2003 confirmation date. *See Holcombe v. US Airways, Inc.*, 2010 WL 750086 at *3. In its

March 22, 2011 decision, the bankruptcy court dismissed Plaintiff's fraud claim against US Airways, holding that her allegations were without merit. The court noted that despite the fact that an erroneous document was submitted to the court, it played "no part in the court's analysis" and provided "no basis" for setting aside the summary judgment ruling.[7] (US Airways Ex. 9 at 11-12.) The court further concluded that its order disallowing Plaintiff's claim was not due to any failure on US Airways' part to bring to the court's attention its agreement with the Union. (Id. at 12-13.) The court finds that these decisions operate as final judgments on the merits for *res judicata* purposes.

Finally, the court concludes that the bankruptcy court proceedings and Plaintiff's current action involve the same claims; both actions involve the same nucleus of operative facts. Plaintiff's amended complaint contains allegations regarding US Airways' failure to adequately accommodate her, its decision to place her on medical leave, its decision to deem her as having resigned, and fraud on the bankruptcy court. As US Airways notes in its motion to dismiss, however, all of these claims were raised in the bankruptcy court and explicitly addressed by the bankruptcy court and/or the Fourth Circuit in its ruling. Accordingly, the elements of *res judicata* have been satisfied and the court will not consider Plaintiff's fraud claim against US Airways or any of Plaintiff's claims against US Airways that arose before March 18, 2003.

Plaintiff does not dispute that the elements of *res judicata* have been met here, or that the bankruptcy court ruled on the merits of her fraud claim when it concluded that US Airways had not engaged in fraudulent conduct. Rather, Plaintiff appears to fault the bankruptcy court for ruling on the issue of fraud without holding an evidentiary hearing. Plaintiff, however, cites

---

[7] It is worth noting that the bankruptcy court found that the document was not a forgery, as Plaintiff alleges, but rather an incorrectly assembled document, a composite of two different letters already part of the deposition record. (US Airways Ex. 9 at 11.) Although the bankruptcy court described the erroneous document as "sloppiness" on the part of US Airways' counsel, it noted that "sloppiness . . . is not the same as fraud," and that although "[h]ow page 2 of the first letter came to be combined with page 1 of the second letter . . . is not explained . . . the fact that it happened at all obviously reflects no credit on the professionalism of counsel." (Id.)

no law in favor of this proposition and, on the current record, the court cannot conclude that the bankruptcy court had any such obligation to hold a hearing.  Moreover, whatever disagreements Plaintiff may have with the substance of the bankruptcy court's ruling, those disagreements are immaterial to a determination of the decision's preclusive effect.  *See Flaherty v. Lang*, 199 F.3d 607, 615 n.5 (2d Cir. 1999) ("For purposes of *res judicata*, it is immaterial whether the [prior court] erred."); *Neshewat v. Salem*, 365 F. Supp. 2d 508, 516 (S.D.N.Y. 2005) ("Whether the prior judgment was decided correctly is not relevant when determining whether the doctrine of *res judicata* bars the suit.") (citing *Nemaizer v. Baker*, 793 F.2d 58, 64-66 (2d Cir. 1986)).  The court therefore concludes that the bankruptcy court's determination that US Airways did not commit any fraud on the court and is entitled to *res judicata* effect.

Nonetheless, Plaintiff argues that US Airways should not be permitted to argue that *res judicata* bars Plaintiff's claims because, Plaintiff asserts, it waived that defense by participating in the arbitration with the Union.  The claims that the Union brought against US Airways in the arbitration were explicitly exempted from discharge by the terms of the confirmation plans.  (*See* US Airways Ex. 2.)  As US Airways argues in its reply memorandum, given that the Union's CBA claims against US Airways were neither litigated nor discharged during US Airways' bankruptcy proceedings, no *res judicata* defense was available to US Airways during its arbitration with the Union.  *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-50 (1974) ("In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement.  By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress."); *see also id.* at 50 (noting that individual claims and CBA claims may both be asserted "in their respectively appropriate forums.").  Persevering, Plaintiff claims that the bankruptcy court's decision does not have preclusive effect because she did not "voluntarily" participate in the bankruptcy proceedings.  More to the point, Plaintiff asserts that she had no choice but to defend her rights in bankruptcy court because the arbitration process had been suspended since October of 2002

and "she saw no other avenues for defending her rights." (Pl. Opp. to US Airways Motion to Dismiss at 14.) Whatever Plaintiff's reasons for choosing to pursue her claims in bankruptcy court, such considerations have no bearing on the court's current determination as to whether the bankruptcy court's decision on those claims has *res judicata* effect. In light of the fact that Plaintiff has advanced no adequate reason why the bankruptcy court's decision should not be accorded *res judicata* effect, the court concludes it may not consider any claim against US Airways that arose prior to March 18, 2003.

B. The Bankruptcy Court Has Exclusive Jurisdiction Over Plaintiff's Claims Arising Between March 18, 2003 and September 16, 2005

In addition to the fact that this court is barred by the doctrine of *res judicata* from considering Plaintiff's claims arising before March 18, 2003 (the confirmation date in US Airways' first bankruptcy proceeding), US Airways asserts that this court lacks jurisdiction over any claim accruing between March 18, 2003 and September 16, 2005 (the confirmation date in US Airways' second bankruptcy proceeding). Such claims, US Airways asserts, remain in the exclusive jurisdiction of the bankruptcy court. The court agrees.

11 U.S.C. § 1141(d) provides, in part, that except to the extent contradicted by the confirmation plan or the order confirming the plan, "the confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation," in this case, September 16, 2005. 11 U.S.C. § 1141(d)(1)(A). In accordance with this provision, US Airways' second joint plan of reorganization provided that "the distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release" of any claims against US Airways arising before September 16, 2005. (*See* U.S. Airways' Ex. 5, Reorganization Plan § 11.2.) The plan further provided that "the satisfaction, release, and discharge pursuant [to the Plan] shall act as an injunction" against the commencement or continuation of any suit against US Airways relating to claims arising before September 16, 2005. (*See id.* § 11.10.) The court concludes that the bankruptcy court therefore retains

exclusive jurisdiction over all of Plaintiff's claims that arose before the second confirmation date.[8]

This court is further persuaded by the bankruptcy court's ruling rejecting Plaintiff's argument that the bankruptcy court lacked jurisdiction over her pre-September 16, 2005 confirmation date claims and denying her request to transfer those claims to this district. As the bankruptcy court noted, "because under 11 U.S.C. § 1141(d)(1)(A) confirmation of a plan (except as otherwise provided in the plan or confirmation order) discharges the debtor from any debt that arose before the date of confirmation, no other court may decree relief with respect to any claim by [Plaintiff] that is determined to have arisen prior to September 16, 2005." (U.S. Airways' Ex. 9, Bankruptcy Court Order Denying Motion to Dismiss for Lack of Subject-Matter Jurisdiction.) Given that Plaintiff does not point to any language in the plan or confirmation order that provides otherwise, the court concludes that the bankruptcy court has exclusive jurisdiction over any of her claims against US Airways that arose prior to September 16, 2005.[9]

C. Plaintiff's Claims of Discrimination and Retaliation Against US Airways

1. Plaintiff has Stated A Claim of Discrimination Claims Against US Airways (Counts XI, XIII, and XV)

Plaintiff alleges that "from March 2003 to the end of 2006, she constantly sought

---

[8] Because the court concludes that the bankruptcy court retained exclusive jurisdiction over any of Plaintiff's claims arising between March 18, 2003 and September 16, 2005, it need not discuss US Airways' argument that such claims are also barred by the doctrine of *res judicata*. The court does note, however, that following the close of briefing, US Airways filed a letter dated July 12, 2013, advising this court that the bankruptcy court's order disallowing such claims due to Plaintiff's failure to comply with discovery orders was affirmed by the Fourth Circuit, *see In re US Airways, Inc.*, 2012 WL 3893216 (4th Cir. Aug. 20, 2012). Further, the Supreme Court denied Plaintiff's petition for a writ of *certiorari* and refused to review those determinations. *See Holcombe v. US Airways, Inc.*, 133 S. Ct. 1812 (2013).

[9] The court notes that Plaintiff appears to argue that the bankruptcy court cannot have exclusive jurisdiction because her grievances against US Airways that arose before September 16, 2005 were submitted for arbitration. However, whatever questions Plaintiff may have about the arbitrator's jurisdiction, such questions are not before this court and are not relevant to the question of whether the bankruptcy court maintains exclusive jurisdiction over Plaintiff's pre-confirmation date claims.

reassignment or transfer applying for the available vacancies." (Amended Complaint ¶ 129.)

During this same period, Plaintiff alleges that she "filed more than 80 applications for other

vacancies available with [US Airways]." (Id. ¶ 131.) Plaintiff alleges that she was denied these

positions as a result of her disability. Moreover, Plaintiff alleges that she was wrongfully

terminated in 2006 when US Airways deemed her to have resigned. (Id. ¶ 136.)

Plaintiff has alleged claims pursuant to the ADA,[10] the NYSHRL, and the NYCHRL,

although there appears to be some disagreement between the parties as to whether Plaintiff's

claim should be considered one for wrongful termination, as Plaintiff argues, or for a failure to

transfer or promote, as US Airways asserts. The court concludes that Plaintiff's claim is better

construed as one for failure to transfer or promote.

Notwithstanding Plaintiff's repeated attempts to litigate US Airways' decision to place her

on medical leave, as indicated, that decision occurred in 2003 and claims that arose before

September 16, 2005 are not properly before this court. Setting aside the "correctness" of the

initial decision, the court is left with the undisputed facts that Plaintiff was on leave from January

1, 2003 until January 1, 2006 and that, pursuant to the 2005 CBA, "[a]ny employee who remains

on leave status in excess of three (3) years shall be deemed to have resigned [her] position,

and shall be removed from the seniority roster. (Amended Complaint Ex. 4 at 54.) Pursuant to

the CBA, in its October 18, 2006 letter, US Airways informed Plaintiff that she was "deemed to

have resigned from US Airways effective 1/1/2006." (Amended Complaint Ex. 18.) Given that

---

[10] The court notes that it is aware of revisions to the ADA as a result of the ADA Amendments Act (the "Act"), signed into law on September 25, 2008. These revisions, however, apply only to claims that arose after January 1, 2009, and, since Plaintiff's claims all arose prior to that date, any changes brought about by the Act do not apply. *See McElwee v. County of Orange*, 700 F.3d 635, 642 n.5 (2d Cir. 2012). The court nonetheless notes that the Act broadened the federal definition of "disabilities" that require accommodation under the ADA. *See Green v. DGG Properties Co, Inc.*, 2013 WL at 395484, at *9 (D. Conn. Jan. 31, 2013). Given that Plaintiff's disability is not in dispute here, the Act would offer no assistance to her.

Plaintiff contests only the decision to place her on leave and not that she was on leave for three years or that, according to the terms of the CBA, she was correctly deemed to have resigned, Plaintiff has articulated a claim for wrongful termination. Nonetheless, given Plaintiff's allegations that from March of 2003 to the end of 2006, she applied for over 80 positions and constantly sought reassignment or transfer, the court will analyze her claim as one for a failure to transfer or promote.

As an initial matter, US Airways asserts that Plaintiff's ADA claim is unexhausted and untimely. US Airways does not contest that Plaintiff's NYSHRL and NYCHRL claims, which are not subject to an exhaustion requirement, are timely. As to exhaustion of her ADA discrimination claim, Plaintiff adequately stated in her EEOC complaint her claim that US Airways impermissibly denied her requests for transfer and/or promotion. (*See* US Airways Ex. 13 (stating that US Airways violated the ADA by "keeping [her] out of work and not allowing [her] to return to [her] duties for more than four years, denying all of [her] applications for alternative positions.").) Second, as to the timeliness of Plaintiff's ADA claim, the court agrees with US Airways that Plaintiff may only bring failure to promote/transfer claims for those positions that were denied to her within the 300 day period preceding her filing her 2007 EEOC charge. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (concluding that with respect to claims based on "termination, failure to promote, denial of transfer, or refusal to hire," a plaintiff may only recover for acts of discrimination that occur within the statutory time period). Thus, because Plaintiff did not file her EEOC complaint until September 21, 2007, only Plaintiff's claims that US Airways impermissibly denied her positions arising after November 26, 2006 are timely under the ADA. Although US Airways correctly points out that Plaintiff's amended complaint does not identify those positions that she was denied between November 26, 2006 and the "end of 2006," when Plaintiff was no longer considered employed by US Airways, such facts may be adequately determined in the normal course of discovery and are not required in an initial pleading. *See Twombly*, 550 U.S. at 559 (holding that a plaintiff's complaint need only

27

establish a "plausible entitlement to relief.")

With respect to employment discrimination cases, a plaintiff is not required to make a *prima facie* case at the pleading stage. However, "the claims must be facially plausible" to survive a motion to dismiss. *Mabry v. Neighborhood Defender Serv.*, —— F.Supp.2d ——, 2011 WL 335867, at *6 (S.D.N.Y. Jan. 31, 2011). The court "considers the elements of a prima facie case in determining whether there is sufficient factual matter in the Complaint which, if true, give [d]efendant fair notice of [p]laintiff's employment discrimination claims and the grounds on which such claims rest." *Maysonet v. Citi Grp., Inc.*, 2011 WL 476610, at *3 (S.D.N.Y. Feb. 9, 2011) (quotation marks and citations omitted).

To establish a *prima facie* case of unlawful discrimination, Plaintiff must demonstrate that "she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378, 398 (S.D.N.Y. 2012). Discrimination claims under the ADA, NYSHRL, and NYCHRL are analyzed under the *McDonnell-Douglas* burden-shifting framework. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (ADA); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL and NYCHRL).

The court finds that Plaintiff has stated a plausible claim of discrimination. Plaintiff alleges that despite her twenty-five years of relevant experience and her thirteen years in customer service, she was denied jobs where the only requirements set forth by US Airways were a high school diploma and work experience as a ticket counter agent. (Amended Complaint ¶ 132.) In this regard, Plaintiff submitted to this court job listings for positions to which she allegedly applied and which appeared on US Airways' website. (Amended Complaint Ex. 16.) Plaintiff further alleges that she was informed on interviews that as a US Airways employee, she receives preferential treatment and advantages in the job application process and that she was actually selected for several positions. (Amended Complaint ¶¶ 133-34.) Despite her qualifications, Plaintiff alleges that she was denied these positions because of her

disability. (Id. ¶¶ 134-35.) In light of these allegations, Plaintiff's NYSHRL and NYCHRL claims against US Airways may proceed, as may her ADA claim to the extent she asserts that she suffered discrimination following November 26, 2006.[11]

### 2. Plaintiff has Failed to State a Claim of Retaliation Against US Airways (Counts XII, XIV, and XVI)

Plaintiff also alleges that US Airways refused to transfer her or promote her in retaliation for her having filed past grievances. As an initial matter, the court deems Plaintiff's ADA retaliation claim exhausted. Notwithstanding US Airways' argument, Plaintiff indicated in her 2007 EEOC complaint that US Airways retaliated against her by "locking [her] out of work for more than four years." (US Airways Ex. 13.) Given the "loose pleading" standards that govern administrative complaints, the court finds this statement sufficient to exhaust Plaintiff's claim that her inability to obtain a position while she was on involuntary leave constituted retaliation for her having filed grievances and a lawsuit against US Airways. *See Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (noting the "'loose pleading' which is permitted in the EEOC complaint" and that "precise pleading is not required for . . . exhaustion purposes."). Moreover, for the reasons discussed as to Plaintiff's ADA discrimination claim against US Airways, the court finds timely only Plaintiff's claims of ADA retaliation that occurred within the 300 day

---

[11] US Airways asserts in a footnote that the NYSHRL and NYCHRL do not apply because Plaintiff has failed to allege any discriminatory conduct in New York. *See Lucas v. Pathfinder's Personnel, Inc.*, 2002 WL 986641, at *1 (S.D.N.Y. May 13, 2002). However, even though it is unclear where the decision to deny Plaintiff these positions originated, at least some of the positions to which she applied were located in New York. (*See* Amended Complaint Ex. 16); *see also DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 85 (2d Cir. 2001) (holding that for purposes of long-arm jurisdiction, because plaintiff was employed in New York, the "original event" causing his injury occurred in New York); *Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societe Per Azioni*, 549 F. Supp. 2d 549, 554 (S.D.N.Y. 2008) (concluding that the NYSHRL and NYCHRL apply "*either* when the initial discriminatory act . . . occurs in New York or when the original experience of injury, which occurs at the employee's workplace, is in New York.") (emphasis in original). Because at least some of the positions Plaintiff sought were in New York, the court finds that any denials of those positions to Plaintiff, also in New York, constitute New York events for purposes of the NYSHRL and NYCHRL. The court therefore declines to dismiss Plaintiff's NYSHRL and NYCHRL claims.

period preceding the filing of her 2007 EEOC charge.  *See McGullam*, 609 F.3d at 75.

However, the court finds that dismissal of all of Plaintiff's retaliation claims against US Airways

is warranted.

In dismissing Plaintiff's retaliation claims against US Airways, the court again "considers

the elements of a prima facie case in determining whether there is sufficient factual matter in the

Complaint which, if true, give [d]efendant fair notice of [p]laintiff's employment discrimination

claims and the grounds on which such claims rest."  *Maysonet*, 2011 WL 476610, at *3.

Although the elements of a *prima facie* case for retaliation differ slightly between the ADA,

NYSHRL, and NYCHRL, under all three statutes Plaintiff must show a causal connection exists

between the alleged adverse action and the protected activity, the only element that US Airways

contests in its motion to dismiss.[12]  *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir.

2002) (ADA); *Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011) (NYSHRL

and NYCHRL).  The court finds that Plaintiff has failed to allege sufficient facts to state a

plausible claim.

To reiterate, in her complaint, Plaintiff alleges that from March of 2003 until the end of

2006, she consistently applied for numerous available positions for which she was qualified,

received interviews and, in some instances, was selected for the position, but was subsequently

denied every position.  (Amended Complaint ¶¶ 129, 131.)  Plaintiff also alleges that she was

denied these positions whenever her interviewer spoke to Bove.  (Id. ¶ 134.)

Plaintiff has not pled sufficient facts to plausibly establish a causal connection between

the filing of her EEOC complaint in October of 2002 and her inability to obtain a position four

months later.  *See Brower v. Continental Airlines, Inc.*, 62 F. Supp. 2d 896, 907 (E.D.N.Y. 1999)

(finding no causal connection where the time intervening between alleged discrimination and

---

[12] Under the NYCHRL, however, Plaintiff is not required to prove any materially adverse
employment action, and so needs only to show a causal connection between the protected
activity and an action that "would be reasonably likely to deter a person from engaging in
protected activity."  *Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011).

protected activity was four months); *see also Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (finding no causal connection where the time intervening between the alleged discrimination and the protected activity was only three months).  Plaintiff's retaliation claim based on the filing of her 2003 lawsuit in this court suffers a similar fate.  It is unclear from Plaintiff's complaint precisely when she was denied the positions for which she applied.  However, as the court has repeatedly indicated in this memorandum, it will not consider any allegedly discriminatory acts that occurred before September 16, 2005.  Thus, to the extent that Plaintiff was denied a position following September 16, 2005, such denial would have occurred, at the earliest, over two years after Plaintiff filed her federal complaint against US Airways.  This gap in time is simply too great for Plaintiff to establish a causal connection between any job denial that occurred after September 16, 2005 and the filing of her federal complaint.  *See Brower*, 62 F. Supp. 2d at 907; *Hollander*, 895 F.2d at 85–86 (2d Cir. 1990).

Plaintiff could nonetheless succeed if she alleged sufficient facts to demonstrate that her denial of job positions constitutes a "continuing violation."  Unfortunately for Plaintiff, the Supreme Court has held that termination, failure to promote, denial of transfer, or refusal to hire are all discrete acts, such that they are separately actionable and not part of a continuing violation.  *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see also Gross v. Nat'l Broadcasting Co., Inc.*, 232 F.Supp.2d 58, 67 (S.D.N.Y. 2002) ("The holding in *Morgan* is in accord with Second Circuit law which states that alleged failures to compensate adequately, transfers, job assignments, and promotions cannot form the basis for a continuing violation claim.").  Thus, Plaintiff's retaliation claim against US Airways is dismissed.[13]

Plaintiff's Claims Against Bove and Holdren

    A. Personal Jurisdiction Over Bove and Holdren

---

[13] The court also notes that Plaintiff, in her opposition, advances no argument against US Airways' position that Plaintiff failed to plead sufficient facts to establish her *prima facie* case of retaliation, instead arguing only that she properly exhausted her retaliation claim.

As preliminary matters, Bove and Holdren assert that this court lacks personal jurisdiction over Holdren because she does not have sufficient contacts with New York, and because Plaintiff failed to properly serve either Bove or Holdren in accordance with Federal Rule of Civil Procedure 4.

First, as to Bove and Holdren's arguments regarding insufficient service of process, Plaintiff does not deny that she failed to serve them in accordance with the provisions of Rule 4. And the court is not persuaded that the requirements of Rule 4 should be overlooked simply because Bove and Holdren do not point to any prejudice that they suffered as a result. *See Alvarado v. Am. Freightways, Inc.*, 2005 WL 1467893, at *3 (S.D.N.Y. June 21, 2005) (noting that even "actual notice . . . does not constitute service or confer jurisdiction 'when there has not been compliance with prescribed conditions of service.'") (quoting *Buggs v. Ehrnschwender*, 968 F.2d 1544, 1548 (2d Cir. 1992)). However, a lack of prejudice may be relevant in determining whether dismissal is appropriate. *See Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737 (2d Cir. 1985) (providing that where process or service of process is insufficient, "[t]he courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant."); *see also Grammenos v. Lemos*, 457 F.2d 1067, 1071 (2d Cir. 1972) ("[T]he fact of invalidity of the one attempt at service does not automatically require dismissal of the complaint. . . . [T]he court has power, under [Rule 4] if the service is invalid or improper, to cause additional or new summons to be issued and good service attempted."). In any event, even were the court inclined to permit Plaintiff to re-serve the amended complaint on Bove and Holdren, it declines to do so given that, for reasons described below, dismissal is warranted on other grounds.

Second, the court rejects Bove and Holdren's contention that Holdren's participation at Plaintiff's grievance hearing in New York is insufficient as a matter of law to confer jurisdiction on Holdren. Holdren's involvement at this hearing comprises a substantial part of the conduct underlying Plaintiff's discrimination claim against her, (*see* Complaint ¶¶ 100-02, 169-70), and

32

courts have [advised] that "even a single, purposeful action directed at New York will be sufficient to confer personal jurisdiction over a defendant not physically present in New York, so long as that action bears a substantial relationship to the cause of the action." *Energy Brands, Inc.*, 571 F. Supp. 2d 458, 466 (S.D.N.Y. 2008) (citation omitted). Thus, although the court is unwilling to conclude at this stage of the proceedings that Holdren's participation in Plaintiff's grievance hearing is an insufficient basis for jurisdiction, as indicated, the court nonetheless finds that dismissal of Plaintiff's complaint as to Bove and Holdren is appropriate.

B. Plaintiff's NYSHRL Claims Against Bove and Holdren are Untimely (Counts VIII, XVII, and XVIII)[14]

Plaintiff brings three claims concerning Bove and Holdren under the NYSHRL. Plaintiff alleges that Bove and Holdren, together with the Union, improperly aided and abetted US Airways in its discrimination and retaliation of Plaintiff by "carrying out adverse decisions and assist[ing] US Airways in discriminating and retaliating against [her]." (Complaint ¶¶ 230-32.) Plaintiff further alleges that Bove discriminated and retaliated against her in violation of the NYSHRL by denying her a reasonable accommodation and releasing her confidential information to other employees. (Id. ¶¶ 256-67.)

In her complaint, Plaintiff attributes to Bove an array of wrongdoing, all of which occurred in January or February of 2002. (*See* Complaint ¶¶ 67, 73-76, 79-80, 87, 97, 101-04 (alleging that Bove refused to provide Plaintiff with a reasonable accommodation, refused to engage in the interactive process, refused to comply with HR's instructions regarding a reasonable accommodation as it pertained to Plaintiff, notified supervisors that they should not consider

---

[14] The court notes that although Plaintiff's fraud claim (Count XIX) is alleged against "defendants," Plaintiff does not specify which defendants. However, Plaintiff's allegations of fraud appear to pertain exclusively to representations made to the bankruptcy court and the Fourth Circuit – proceedings in which Bove and Holdren did not participate as parties or amici. (*See* Complaint ¶¶ 268-75.) Moreover, the forged letter Plaintiff alleges was submitted to the bankruptcy court was not drafted by Bove or Holdren. (*See* id. ¶¶ 273-74; Complaint Ex. 20.) The court accordingly construes Plaintiff's fraud claim as applying only to US Airways and the Union, and not to Bove or Holdren.

Plaintiff's requests for accommodation, precluded Plaintiff from transferring to a different position or facility, and shared Plaintiff's confidential information with other employees which resulted in numerous acts of harassment).)  Moreover, Plaintiff claims that in 2003, Bove impermissibly placed her on involuntary medical leave and that, from 2003 until she was deemed to have resigned in 2006, despite being interviewed and selected for several positions, Plaintiff never heard from her interviewers once they contacted Bove.  Plaintiff thus appears to allege that Bove sabotaged her efforts to secure other positions at US Airways.  (Id. ¶¶ 106, 129, 134.)  In addition to these allegations against Bove, Plaintiff claims that at her October 15, 2002 hearing, Holdren, as US Airways' representative at the hearing, falsely attested that US Airways was not able to provide Plaintiff with a reasonable accommodation.  (Id. ¶¶ 100-102.) Plaintiff further alleges that on November 4, 2002, Holdren impermissibly inquired without permission or authorization from Plaintiff as to whether the Union would allow US Airways to violate the seniority provisions of the CBA such that US Airways could provide Plaintiff with the accommodation she requested.  (Id. ¶¶ 103-04.)

Plaintiff's NYSHRL claims are subject to a three-year statute of limitations.  *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (applying three-year statute of limitations to claims under the NYSHRL); N.Y. C.P.L.R. § 214(2).  As indicated, the only improper conduct Plaintiff attributes to Holdren occurred in 2002.  Similarly, most of the conduct Plaintiff attributes to Bove occurred in 2002, although she does imply that Bove improperly interfered with her ability to return to work until 2006.  Plaintiff, however, did not assert any claims against Bove or Holdren until she filed her amended complaint on December 22, 2010. Thus, any claim based on conduct that occurred before December 22, 2007 is time-barred. Indeed, even if Plaintiff's claims were tolled during the pendency of her EEOC charge of discrimination, the limitations period would only be extended by the 124 days that her charge was before the EEOC, barring any claim of discrimination that arose before August 20, 2007. *See Wilson v. New York City Police Dep't*, 2011 WL 1215031, at *14 (S.D.N.Y. Feb. 4, 2011)

(noting that while the Second Circuit has not yet decided the issue, "numerous courts in this Circuit have held that the three-year statute of limitations applicable to claims under the NYSHRL . . . is tolled during the period in which a complaint is filed . . . with the EEOC.") (internal quotation marks and citation omitted) (second alteration in original). As Plaintiff's claims against Bove and Holdren all arose in 2006 or earlier, they are untimely.

Nonetheless, Plaintiff's claims against Bove and Holdren will be deemed timely if they "relate back" to the original complaint. Whether a claim relates back is governed by Federal Rule of Civil Procedure 15(c).[15] Neither of Plaintiff's original complaints filed in her 2003 or 2008 actions against US Airways and the Union named Bove or Holdren as defendants. Rather, Plaintiff included claims against them for the first time when she filed her amended complaint on December 22, 2010. Pursuant to Rule 15(c), an amendment to a pleading that names a new party "relates back to the date of the original pleading" only if the following elements are met: (1) the claims against the new party "arose out of the conduct, transaction, or occurrence . . . in the original pleading"; and within the 120 day period after the complaint was

---

[15] Rule 15(c)(1) provides that:

An amendment to a pleading relates back to the date of the original pleading when:

    (A) the law that provides the applicable statute of limitations allows relation back;

    (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

    (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

        (I) received such notice of the action that it will not be prejudiced in defending on the merits; and

        (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

filed, the new party (2) "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P.15(c)(1). These requirements seek "to balance the interests of the defendant protected by the statute of limitations with the preferences expressed in the Federal Rule of Civil Procedure, in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere, S.p.A.*, 130 S. Ct. 2485, 2494 (2010). Given that the parties focus their attention on the final prong of this analysis – whether Bove and Holdren knew or should have known, based on the allegations in the original complaints, that their absence from the complaints was a mistake as to their identities as proper parties – the court confines its discussion to this prong as well.

As stated, when an amended pleading names an additional party, the pleading relates back to the original pleading date only if the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1). The Supreme Court has indicated that the appropriate question is therefore "not whether [the plaintiff] knew or should have known the identity of the [party it seeks to add by amendment], but whether the [party the plaintiff seeks to add] knew or should have known that it would have been named as a defendant but for an error." *Krupski*, 130 S. Ct. at 2493.

The requisite knowledge is typically established by allegations respecting a named party that, in fact, concern the originally unnamed party plaintiff seeks to add. Indeed, "[t]he history of Rule 15 itself indicates that it was enacted to respond to mistakes of [a certain] kind -- *i.e.*, wrongful identification of the party whose conduct is described in the complaint." *In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 507 (S.D.N.Y. 2010). Here, however, nothing in either of Plaintiff's original complaints relates to either Bove or Holdren, but rather only to US Airways as an entity. Indeed, neither of Plaintiff's original complaints make any

mention of the grievance hearing at which Holdren participated or the fact that US Airways requested permission from the Union to violate seniority provisions of the CBA to accommodate Plaintiff. Similarly, although Plaintiff's original complaints refer to the fact that US Airways denied her a reasonable accommodation, there is no mention in either the 2003 or 2008 complaints of any employee's role in the decision to deny her an accommodation, her meeting with Bove regarding her requests for accommodation, or any other description of conduct that would indicate that Plaintiff intended to name Bove as a defendant, but failed to do so because of a mistake in identity. As a result, Plaintiff has failed to meet her burden "of proving that the failure to name [Bove and Holdren] in the original pleading was a "mistake," and not due to strategy, lack of knowledge, or some other reason. *See Bass v. World Wrestling Federatoin Entertainment, Inc.*, 129 F. Supp. 2d 491, 507-08 (E.D.N.Y. 2001) (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469-70 (2d Cir.1995), *modified on other grounds*, 74 F.3d 1366 (1996)).

Moreover, the court notes that Plaintiff provides no explanation as to why she failed to name Bove or Holdren as defendants in her original complaints, and instead asserts only that Bove and Holdren had knowledge of the claims against them by virtue of the fact that they are employed by US Airways and played a role in addressing Plaintiff's grievances. (Plaintiff's Opposition to Individual Defendants' Motion to Dismiss at 23-24.) The court disagrees. This is not an instance where Plaintiff merely did not know that she needed to name the individual defendants in the caption but adequately described conduct attributed to them in her original complaints. *See Mosley v. Jablonsky,* 209 F.R.D. 48, 53 (E.D.N.Y.2002) ("[Plaintiff] apparently did not know that he needed to name the individual defendants in the caption as well as in the list of defendants, and his failure to do so . . . can be characterized as a 'mistake' for purposes of Rule 15(c)(3)."). Rather, as indicated, Plaintiff's original complaints are completely devoid of any factual allegations describing Bove or Holdren's role in US Airways' denial of her accommodation or the grievance process. *See Krupski,* 130 S. Ct. at 2494 (distinguishing

between a mistake, where "a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events," and a "deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties")*; see also In re IndyMac Mortgage-Backed Sec. Litig.*, 718 F. Supp. 2d at 507 (indicating that Rule 15 allows relation back to remedy instances where a plaintiff wrongfully identified a defendant "whose conduct is described in the complaint."). Accordingly, the court grants Bove and Holdren's motion to dismiss Plaintiff's NYSHRL claims against them.

IV. Conclusion

For the reasons set forth above, the court GRANTS the Union's motion to dismiss (03-cv-4785 [118], 08-cv-1593 [74]) with respect to Plaintiff's breach of the CBA claim, her NYSHRL and NYCHRL claims, her ADA discrimination claim, and her fraud claim (Counts II, IV, VI, VII, VIII, IX, X, and XIX). The Union's motion is DENIED with respect to Plaintiff's ADA claims of breach of the duty of fair representation and retaliation (Counts I and V). The court GRANTS US Airways' motion to dismiss (03-cv-4785 [119], 08-cv-1593 [75]) with respect to Plaintiff's breach of the CBA claims, her NYSHRL, NYCHRL, and ADA claims of retaliation, and her fraud claim (Counts II, III, XII, XIV, XVI, and XIX). US Airways' motion is DENIED with respect to Plaintiff's NYSHRL and NYCHRL discrimination claims (Counts XIII and XV). US Airways' motion is FURTHER DENIED as to Plaintiff's ADA claim of discrimination, but only insofar as Plaintiff has alleged claims that accrued after November 26, 2006 (Count XI). In all other respects, Plaintiff's ADA claim of discrimination against US Airways is DISMISSED. Finally, the court GRANTS Bove and Holdren's motion to dismiss (03-cv-4785 [122], 08-cv-1593 [78]) in its entirety (Counts VIII, XVI, and XVII).

SO ORDERED.

_____/s/_____
SANDRA L. TOWNES
United States District Judge

Dated: September 30, 2013
       Brooklyn, New York